**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
SENIOR JUDGE MARCIA S. KRIEGER**

**Civil Action No. 18-cv-02675-MSK-MEH**

**MARTIN STOREY,**

 **Plaintiff,**

**v.**

**UNION PACIFIC RAILROAD COMPANY,**

 **Defendant.**

───────────────────────────────────────────────────────────────

**OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT**
───────────────────────────────────────────────────────────────

 **THIS MATTER** comes before the Court pursuant to the Defendant's ("Union Pacific") Motion for Summary Judgment **(# 32)**, Mr. Storey's response **(# 37)**, and Union Pacific's reply **(# 40)**.

**FACTS**

 For purposes of this motion, the pertinent facts are undisputed. Mr. Storey was employed by Union Pacific as a Trainman, and on May 28, 2018, he was performing switching work between two tracks. The surface he was standing on was "mainline ballast," composed of crushed rock or gavel used to support and provide drainage for train tracks. Mr. Storey's Complaint **(# 1)** alleges that the ballast on which he was standing "had been recently dumped there by [Union Pacific] and had not been appropriately compacted to ensure safe pedestrian activity." Mr. Storey "unexpectedly lost his footing on the loose ballast and severely injured his ankle."

1

Mr. Story brought a single claim under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* That statute provides generally that railroad operators are liable for any injury sustained by an employee due to the operator's "negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51. Mr. Storey contends that Union Pacific was negligent in that, among other things, it "fail[ed] to properly install, inspect, repair, and maintain a reasonably safe and suitable walkway" for the work that Mr. Storey was asked to perform.

Union Pacific now moves **(# 32)** for summary judgment on Mr. Storey's claim, arguing that as a matter of law the Federal Rail Safety Act ("FRSA"), 45 U.S.C. § 20101 *et seq.*, supersedes any FELA claim that is premised upon a railroad operator's improper use of track ballast. The FRSA states it intends for laws and regulations governing railroad operations to be "nationally uniform to the extent practicable," and thus, it expressly provides that regulations or orders issued under the statute preempt any state law or regulation "covering the same subject matter." 45 U.S.C. § 20106(a)(1), (2). The Secretary of Transportation has issued specific regulations under the FRSA concerning ballasts, requiring that "all track shall be supported by material which will: (a) transmit and distribute the load of the track . . . to the subgrade; (b) restrain the track . . . under dynamic loads; (c) provide adequate drainage for the track; and (d) maintain proper track crosslevel, surface, and alinement [sic]." 49 C.F.R. § 213.103. Nothing in the regulations expressly address the composition or compaction of ballast.

## ANALYSIS

In essence, Union Pacific's motion presents a question of law: whether, under the facts asserted by Mr. Storey, the FRSA precludes his claim under the FLRA. Numerous courts have addressed this question, but with inconsistent results.

Most cases begin their analysis with *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993), the Supreme Court's only decision interpreting the FRSA's preemption language. *Easterwood* involved an accident where a truck driver was killed after entering a railroad crossing and being stuck by a train. The driver's estate sued the railroad operator under Georgia common law, asserting that the operator was negligent in failing to install signals at the crossing and for operating the train at an excessive speed. In considering the issue of FRSA preemption, the Supreme Court first explained that the railroad operator had to show more than just that federal regulations "touch upon" or "relate to" the same subject matter as the state negligence law, because the FRSA's statutory preemption language applies only when the federal regulation "cover[s]" the the same subject. The Court stated that "'covering' is a more restrictive term which indicates that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." 507 U.S. at 664. With regard to the claim that the railroad was negligent in failing to install signals, the Court carefully parsed all of the relevant regulations, finding that some were inapplicable because they were merely advisory or concerned the allocation of federal funds, not railroad operations. Others were arguably sufficiently specific so as to preempt the state tort law, but the Court found that the facts of the case did not fall within those regulations' requirements. For example, a regulation required that automatic crossing gates be installed if federal funds were used for the installation of warning devices. The Court found that this language would displace the state law, but it did not apply because there was no evidence that federal funds were actually used on warning devices at the crossing in question. 507 U.S. at 669-672. Thus, the estate's negligence claim relating to the lack of signals was not preempted.

As to the claim that the train was operated at an unreasonable speed, the Court's analysis was different. It noted that federal regulations set maximum speed limits for various classes of track, but that the facts indicated that the train involved in the accident was operated below that maximum speed. But the Court also concluded that a complex web of regulations operated to "cover[ ] the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings," such that "the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort" that a state common-law negligence claim would impose. 507 U.S. at 674-75. Rejecting the driver's argument that such speed regulations are intended only to prevent train derailments, not to address safety at grade crossings, the Court made clear that FRSA preemption "does not [ ] call for an inquiry into the Secretary's purposes," but merely asks whether the regulations "cover the subject matter of train speed." *Id.* at 675. Finding that the combination of regulations permitted the conclusion that the regulations "covered" the issue of train speed generally, the Court concluded that the excessive speed claim was preempted.

In the wake of *Easterwood*, the question arose as to whether the FRSA's preemption language – which expressly refers only to state laws – would nevertheless preempt application of a federal statute like FELA if the employee's claims touched on an issue of railroad operations regulated by the FRSA. The substantial weight of authority, at both the Circuit and District Court levels, finds that the FRSA preempts FELA claims as well. *See generally Cowden v. BNSF Railway Co.*, 690 F.3d 884, 891-92 (8th Cir. 2012) *and cases cited therein*. Almost universally, these cases offer little justification for such conclusion, except to enunciate a concern over the perceived confusion that might result if state-law claims were deemed preempted by the FRSA under *Easterwood*, but FELA claims arising from the same facts were

4

allowed to proceed.  *See e.g.  Waymire v. Norfolk and Western Ry. Co.*, 218 F.3d 773 (7th Cir. 2000) (where the employee asserted FELA claim that he was injured due to the train traveling at an unreasonable speed, "[i]t would thus seem absurd to reach a contrary conclusion [*to Easterwood*] in this case when the operation of both trains was identical and when the Supreme Court has already found that the conduct is not culpable negligence"); *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001) (49 U.S.C. § 20106(a)'s concerns for "nationally uniform" railroad operating standards "can only be achieved if the regulations covering train speed are applied similarly to a FELA plaintiff's negligence claim and a non-railroad employee plaintiff's state law negligence claim," lest "a railroad employee could assert a FELA excessive-speed claim, but a non-employee motorist involved in the same collision would be precluded from doing so").  Once the general trend of authority established itself, other courts also fell in line, not because of the persuasiveness of cases like *Waymire* and *Lane*'s reasoning, but simply to avoid creating a split of authority among the Circuits.  *See Cowden*, 690 F.3d at 892.

This Court is unpersuaded by the summary conclusion found in the majority rule decisions for a number of reasons including that they do not employ ordinarily applicable principles of statutory interpretation and, instead defer to ephemeral concerns.  Far more persuasive is the reasoning found in more recent minority rule decisions such as *Henderson v. National R.R. Passenger Corp.*, 87 F.Supp.2d 610 (S.D.N.Y. 2015), which comprehensively collects and methodically refutes the reasoning of the majority rule cases.  Indeed, in more recent years, the minority view that the FRSA does not preempt FELA claims has begun to emerge more forcefully, whereas the majority rule appears to have lost some traction. [1]  *See e.g. Guinn*

---

[1] The turning point might have been the Supreme Court's decision in *POM Wonderful, LLC v. Coca-Cola Co.,* 573 U.S. 102 (2014), a case in which the Court rejected the argument that the federal Food, Drug, and Cosmetic Act's ("FDCA") regulatory sphere as it applied to

*v. Norfolk Southern Ry. Co.*, 441 F.SUpp.3d 1319, 1333-34 (N.D.Ga. 2020); *James v. Soo Line Railroad*, 2018 WL 279743 (D.Mn. Jan. 3, 2018) (slip op.); *and Jones v. BNSF Ry. Co.*, 306 F.Supp.3d 1060, 1068 (C.D.Ill. 2017)*; Madden v. Anton Antonov & AV Transportation, Inc.*, 156 F.Supp.3d 1011 (D.Ne. 2015).

The 10th Circuit has not addressed the issue, either directly or inferentially. In the absence of such authority, this Court finds the burgeoning minority viewpoint to be better reasoned and reflect more modern concepts of preclusion. First, no language in FRSA indicates Congressional intent to preclude preempt <u>both</u> state and federal claims. Congress is usually presumed to say what it means, and indeed, Congress has enacted multiple statutes that broadly preempt state law claims but allow a specific federal claim to proceed on exactly the same facts. ERISA is a prime example. 29 U.S.C. § 1144(a); *see generally Gobeille v. Liberty Mut. Ins. Co.*, 136 S.Ct. 936, 943-44 (2016). Second, following the majority line of precedent would require the Court to either selectively ignore the word "state" in 49 U.S.C § 20106(a)(2) and (b), or to read "state" to mean "state and federal governments." Either interpretation essentially rewrites the statute with a judicial pen. Concerns that preemption only of state law claims and not FELA claims would result in confusion or unfairness is a policy issue reserved for legislative

---

food products operated to preclude false advertising claims brought under the Lanham Act with regard to the labeling of a fruit drink. There, as here, the FDCA contained a provision expressly preempting <u>state</u> laws within the act's regulatory horizon, but, as the Supreme Court noted, "the provision does not refer to requirements imposed by other sources of law, such as federal statutes." 573 U.S. at 114. Explaining that "[f]or purposes of deciding whether the FDCA displaces a regulatory or liability scheme in another statute," the Court made clear that "it makes a substantial difference whether that other statute is state or federal," and concluded that "[p]re-emption of some state requirements does not suggest an intent to preclude federal claims." *Id.*

Although Union Pacific argues here that *POM Wonderful* should be read narrowly and only as to the specific statutes at issue in that case, cases such as *Henderson* and others cited above persuasively demonstrate that *POM Wonderful* warrants broader consideration.

6

consideration. For these and the many other reasons well-stated in *Henderson* and similar cases, this Court concludes that the statutory language of FRSA does not preclude claims under FELA.[2]

## **CONCLUSION**

Accordingly, Union Pacific's Motion for Summary Judgment **(# 32)** is **DENIED**.  It appearing that the deadline for dispositive motions has otherwise passed and there are no

---

[2]  To the extent that the reasoning of the majority decisions is applied, the evidence does not presently suggest that Mr. Storey's claim under FELA would directly challenge the scope or application of  FRSA's regulatory scheme as it relates to track ballast.  If the Secretary's regulations under FRSA require ballast to be compacted to a certain specific degree of firmness, and Mr. Storey's FELA claim is that Union Pacific was negligent by not compacting the ballast to an even greater level, one might be inclined to conclude that Mr. Storey's claim would improperly intrude upon specific directives issued under the FRSA.  But so far as the Court can see, the Secretary's regulations governing ballast are so generalized and non-specific that there is no risk that Mr. Storey's negligence claim, if successful, will require railroads to choose between complying with the FRSA's regulations and avoiding liability to employees like Mr. Storey.  If Mr. Storey was asked to perform work while standing on trackside ballast that created unreasonably loose footing, such finding would not necessarily undercut Union Pacific's ability to demonstrate that the same ballast was sufficient to transmit track loads to the subgrade, to restrain the track under load, the provide for adequate drainage, and to maintain proper track surfaces and alignments, so as to satisfy the requirements of the FRSA and 49 C.F.R.. § 213.103.  Indeed, it's defense might be that compacting the ballast to the level demanded by Mr. Storey would cause that ballast to no longer meet the requirements of the FRSA (*e.g.* that ballast so compacted would no longer provide adequate drainage).  In such circumstances, on a more developed factual record, Union Pacific might ultimately prevail upon its contention that the FRSA regulations preclude Mr. Storey's FELA claim.  But Union Pacific has not made such a factually-intensive argument and the Court need not consider the issue further at this time.

remaining matters requiring resolution prior to trial, the parties shall jointly contact chambers to schedule a pretrial conference.

Dated this 18th day of August, 2020.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge